# EXHIBIT A

RECEIVED

MAR 2 0 2015

INSURANCE
COMMISSIONER

SUPERIOR COURT OF WASHINGTON IN AND FOR KING COUNTY

| | |
|---|---|
| KING COUNTY, a Washington Municipal Corporation, ) ) ) | No. 15-2-03541-0 SEA |
| Plaintiff, ) ) | FIRST AMENDED COMPLAINT FOR DAMAGES AND |
| v. ) ) | DECLARATORY RELIEF |
| LEXINGTON INSURANCE COMPANY; ALLIED WORLD ASSURANCE COMPANY (U.S.) INC.; and CH2M HILL, INC., ) ) ) ) | |
| Defendants. ) ) ) | |

## PARTIES

1.      King County is a Washington municipal corporation.

2.      CH2M Hill, Inc. is a Florida corporation. It maintains an office in Bellevue, Washington. CH2M Hill's registered agent is CT Corporation System in Olympia, Washington.

3.      Lexington Insurance Company is a foreign insurance company that does business as a surplus lines insurer in the State of Washington.

4.      Allied World Assurance Company (U.S.) Inc. is a foreign insurance company that does business as a surplus lines insurer in the State of Washington.

FIRST AMENDED COMPLAINT FOR
DAMAGES AND DECLARATORY RELIEF - 1

**Daniel T. Satterberg,** Prosecuting Attorney
CIVIL DIVISION, Contracts Section
900 King County Administration Building
500 Fourth Avenue
Seattle, Washington 98104
(206) 296-0430  Fax  (206) 296-0415

## JURISDICTION AND VENUE

5.      The court has subject matter jurisdiction over this action for damages pursuant to RCW 2.08.010 because the demand in controversy exceeds the statutory dollar amount and the mandatory arbitration amount.

6.      The court has personal jurisdiction over each defendant.

7.      Venue is proper under RCW 48.15.150, which provides a surplus lines insurer issuing a contract in this state must be sued in the superior court of the county in which the cause of action arose. This cause of action arose in King County, Washington.

## BRIGHTWATER INFLUENT PUMP STATION

8.      This action involves a public works project known as the Brightwater Regional Wastewater System. The Brightwater project includes a 36 million gallon per day water treatment plant, 13 miles of conveyance tunnels, reclaimed water distribution, and a marine outfall in Puget Sound.

9.      A key component of the Brightwater project is the Brightwater Influent Pump Station (the IPS or Pump Station) located in Bothell, Washington. The size of the IPS is equivalent to a building of 11 stories, with 80 feet underground containing equipment and facilities on four levels. The above-ground structures cover nearly 50,000 square feet in the Bothell Business Park. King County intended the Pump Station to be designed for a capacity of 130 million gallons per day (mgd) with an ultimate capacity of 170 mgd over the useful life of the facility. King County expected a state-of-the-art design for a mostly autonomous, computer controlled operation with minimal staff maintenance. King County paid the engineers over $12.7 million for the design of the IPS. The design team decided on six sets of pumps – powered by electric motors – to pump influent wastewater through large pipes in the

Daniel T. Satterberg, Prosecuting Attorney
CIVIL DIVISION, Contracts Section
900 King County Administration Building
500 Fourth Avenue
Seattle, Washington 98104
(206) 296-0430  Fax  (206) 296-0415

Brightwater tunnel uphill, under significant pressure, from the IPS in Bothell to the Brightwater Treatment Plant, 2.5 miles north of Woodinville. King County and its ratepayers paid over $100 million to construct the Pump Station; $138 million for the pipelines in the tunnel from the Pump Station in Bothell to Woodinville; and $23 million for the 66" pipeline on the Treatment Plant site from the East tunnel portal to the headworks of the Treatment Plant. These facilities are significant components of the $1.86 billion Brightwater System and very valuable assets in King County's infrastructure.

10.    The criteria for the IPS design called for protection against overflows of untreated material into local waterways, streets, or homes under any circumstances, including storms, which might cause a sudden power loss. For this reason, the IPS has a standby power system consisting of three back-up diesel generators that activate in an emergency power loss.

11.    It was understood that the emergency diesel generators would not be able to start instantly when a power loss occurred. The primary electric motors in the IPS had to be such that, when the power went off, the electric motors would keep moving with sufficient inertia to slow the pumps down gradually. To put it another way, the electric motors should slowly roll toward a stop. The diesel generators would then have enough time to engage and take over pumping duties. But if the electric motors lacked sufficient inertia – if it was more like slamming the breaks on the pumps – the diesel generators would not have enough time to engage. This can create a nightmare scenario in which a vacuum, followed by dangerous pressures, build up inside the pipelines.

**NIGHTMARE SCENARIO OCCURS**

12.    In May 2011, during testing of the IPS facility, electricity was purposefully cut off to the electric motors. The motors proved not to have enough inertial capacity to slow the

FIRST AMENDED COMPLAINT FOR
DAMAGES AND DECLARATORY RELIEF - 3

**Daniel T. Satterberg**, Prosecuting Attorney
CIVIL DIVISION, Contracts Section
900 King County Administration Building
500 Fourth Avenue
Seattle, Washington 98104
(206) 296-0430  Fax (206) 296-0415

pumps down gradually. Flow in one of the large pipes in the Brightwater tunnel stopped, setting off a potentially catastrophic chain of events. A vacuum was created followed by the formation of a vapor cavity in the pipeline. Then there was a surge of fluid in the pipeline from Bothell to Woodinville. The fluid surge slammed back and forth inside the pipeline, with wild swings of positive and negative pressure. The swings produced ferocious vibrations and noise. Because of the extreme pressure changes inside the pipeline, a valve connection burst, and the pipeline started to spew fluid into the pump station at high pressure. This occurred 80 feet underground in the IPS with King County personnel and consulting engineers in the immediate proximity. Fearing for their lives, these individuals crouched on the floor or ran up the stairs to escape.

13.     Fortunately, catastrophic loss of life and destruction were avoided. But it was clear that the design of the IPS had failed in one of its most important purposes. The responsibility lay squarely with CH2M Hill, the prime design firm, and CH2M Hill's subcontractor, Brown and Caldwell (BC), the firm that designed the Brightwater Influent Pump Station (collectively, Design Team or Engineers). King County has its contract for the design engineering services with CH2M Hill and holds that firm responsible.

### CH2M HILL'S DESIGN RESPONSIBILITIES

14.     CH2M Hill signed a contract with King County, agreeing to serve as the primary consultant for the design of the Brightwater Treatment Plant, Contract No. E13035E. The contract included the design of the IPS. Among CH2M Hill's responsibilities was drafting the technical plans and specifications for the contract for the actual construction of the IPS. In other words, as the designer, CH2M Hill was responsible for providing proper instructions for the construction contractor about what to build and what types of equipment the IPS had to have.

**Daniel T. Satterberg,** Prosecuting Attorney
CIVIL DIVISION, Contracts Section
900 King County Administration Building
500 Fourth Avenue
Seattle, Washington 98104
(206) 296-0430 Fax (206) 296-0415

15.     CH2M Hill had a responsibility to exercise the degree of care, skill, and diligence in the performance of its services as is ordinarily possessed and exercised by similar professionals in similar circumstances. This responsibility is memorialized in the design contract between CH2M Hill and King County.

16.     The design contract specifies CH2M Hill's obligations as follows:

> shall without additional compensation, correct or revise any errors, omissions or other deficiencies in such plans, designs, drawings, specification, reports and other services ....

§ 5.A.1.

> [CH2M Hill] agrees to indemnify and hold harmless King County ... from ... any and all ... losses, costs ...damages of whatsoever kind or nature arising out of, in connection with or incident to errors, omissions, or negligent work or service provided by or on behalf of the Consultant [CH2M Hill].

§ 16.C.

> [I]n the event of litigation between the parties to enforce the rights under this paragraph, reasonable attorney fees shall be allowed to the prevailing party.

*Id.*

## OWNER CONTROLLED INSURANCE PROGRAM

17.     The Brightwater Regional Wastewater System project was an immense public works undertaking costing the ratepayers $1.86 billion. To manage the risks associated with the project, King County established an Owner Controlled Insurance Program (OCIP). The various design engineering firms were protected under the professional liability policy of the Program.

18.     As part of the OCIP, King County purchased an insurance policy from Lexington Insurance Company (Lexington), Policy No. 1152127.

19.     Lexington was the primary insurer under the policy, up to a limit of $15 million. Allied World Assurance Company (U.S.) Inc. (AWAC) provided excess coverage under the

FIRST AMENDED COMPLAINT FOR
DAMAGES AND DECLARATORY RELIEF - 5

**Daniel T. Satterberg,** Prosecuting Attorney
CIVIL DIVISION, Contracts Section
900 King County Administration Building
500 Fourth Avenue
Seattle, Washington 98104
(206) 296-0430  Fax  (206) 296-0415

insurance policy, up to a limit of $25 million under Policy No. CU115127 with the same overall terms (primary and excess insurers, collectively, "Insurers"; primary and excess policies collectively, "Policy"). The insurance Policy, therefore, provided $40 million in protection for King County relating to the Brightwater Regional Wastewater System. In exchange, King County paid the Insurers a significant insurance premium, well over $2.6 million.

20.    The insurance policy identified the licensed or registered professionals who performed professional services on the Brightwater Project as insureds. For a specific premium cost, King County purchased extra protection for itself as an additional insured under Endorsement No. 9.

## EGREGIOUS, UNDISCLOSED DESIGN ERRORS

21.    After the near catastrophic surge event of May 2011, King County learned that the subconsultant engineers, Brown and Caldwell, had initiated a hydraulic surge analysis, performed calculations, and authored a technical memorandum entitled, "Surge Analysis of the Brightwater Influent Tunnel, Pump Station, and Force Main System." The technical memorandum contained <u>preliminary</u> design specifications for surge protection capacity. But the Engineers were clear that the analysis had to be reevaluated later as the IPS design developed: "As the solution is somewhat sensitive to the system inertia and the elevation of the discharge header, it is recommended that the surge analysis be repeated at a later stage of the design."

22.    The Engineers committed numerous egregious errors and omissions related to the technical memorandum. First, the Engineers failed to disclose the contents of the memorandum to King County until after the 2011 surge event. Second, the Engineers failed to repeat the surge analysis at a later time as required by the memorandum. Because the Engineers never gave King County the memorandum, King County did not know that the analysis was incomplete. Third,

FIRST AMENDED COMPLAINT FOR
DAMAGES AND DECLARATORY RELIEF - 6

Daniel T. Satterberg, Prosecuting Attorney
CIVIL DIVISION, Contracts Section
900 King County Administration Building
500 Fourth Avenue
Seattle, Washington 98104
(206) 296-0430  Fax (206) 296-0415

1    when drafting the construction contract, the Engineers failed to include even the technical

2    memorandum's preliminary specifications for surge protection capacity. Instead, the contract

3    included specifications for inertial capacity – expressed in units of lb.-ft.[2] – that understated the

4    actual requirements by 250 percent for the small motors and 300 percent for the large motors.

5

6          23.    These errors were egregious, inexcusable, dangerous, and costly.

7                **REFUSAL TO REIMBURSE KING COUNTY ITS ACTUAL COSTS**

8          24.    King County's project representative demanded that the design Engineers

9    remediate the design error and indemnify King County for related cost, as required by the

10   engineering contract:

11              The Consultant shall without additional compensation, correct
12              or revise any errors, omissions or other deficiencies in such
                plans, designs, drawings, specifications, reports and other
13              services. . . .

14              The Consultant agrees to indemnify and save harmless King
15              County . . . from . . . any and all . . . losses, costs . . . damages
                of whatsoever kind or nature arising out of, in connection with
16              or incident to errors, omissions, or negligent work or service
                provided. . .

17   *Id.*

18         25.    The Engineers had already confirmed to King County, in writing, that corrective

19   engineering services would be provided at no charge. But this did not address the costs directly

20   incurred by King County to run the Pump Station in its compromised, more dangerous state (as

21   opposed to costs incurred by the Engineers to provide remedial design and a fix). CH2M Hill

22   submitted the claim to the OCIP insurers, Lexington Insurance Company and Allied World

23   Assurance Company (U.S.) Inc., and notified Donovan Hatem, the Program Manager for the

24   Insurers. Soon after the surge event, the Design Team's liability for the remedial measures was

25

26   confirmed and has never been disputed.

**Daniel T. Satterberg**, Prosecuting Attorney
CIVIL DIVISION, Contracts Section
900 King County Administration Building
500 Fourth Avenue
Seattle, Washington 98104
(206) 296-0430  Fax  (206) 296-0415

26.     The design errors by the Engineers created the need for extremely expensive remedial measures. In March 2012, the Engineers issued a new technical report, recommending higher inertia motors with extremely large flywheels in order to fix the design error and prevent another surge in the event of a power outage. The engineering to confirm that these new motors would work with the already installed pumps would cost $300,000; the new motors would cost over $3 million. All told, the Engineers' cost to remediate their mistake was estimated at $10.8 million.

27.     Although the Engineers would eventually purchase and install the new motors in 2013 and 2014, and be paid by the Insurers to do so, the responsibility for preventing a disaster in the operating Pump Station and throughout the Brightwater System fell to King County, the owner and operator of the System. King County repaired the damage from the first incident in May 2011 and has been proactively managing the risk and preventing disaster from May 2011 to date. The new motors are now fully tested as of February 2015, almost four years later.

28.     King County's costs to manage the risk include, but are not limited to, repairing pipe connections and venting to directly address the surge impacts; purchasing and implementing new computer programs to control the equipment; increased testing and running of the diesel generators; and addressing clean air concerns – all requiring extra staff on regular duty and more emergency weekend and stand-by staff.

29.     King County had to manage the implementation of the Engineers' construction project to install the remedial motors. The Pump Station is an integral part of the Brightwater System, which has been in service since Interim Commissioning in September 2011, with County management of the surge risk. The remediation required that each of the four current pump and motor trains be taken off line one by one, as the two new motors for each pump were

FIRST AMENDED COMPLAINT FOR
DAMAGES AND DECLARATORY RELIEF - 8

Daniel T. Satterberg, Prosecuting Attorney
CIVIL DIVISION, Contracts Section
900 King County Administration Building
500 Fourth Avenue
Seattle, Washington 98104
(206) 296-0430  Fax  (206) 296-0415

installed. King County staff had to oversee the removal and operate the System with one pump train down, performing all the required activities to manage the operation during the remedial construction project, in what was supposed to be an autonomous facility. These are costs the regional ratepayers did not intend to be part of the Brightwater project.

30.     Instead of accepting responsibility for all the damages, the Insurers started to bargain with the money that they owed pursuant to the insurance policy – money that was desperately needed to start fixing the Engineers' errors – as leverage to try to extract monetary concessions relating to King County's out-of-pocket costs. Despite the existence of insurance coverage for precisely this type of harm, the insurance companies, in effect, have insisted that the ratepayers absorb millions of dollars in damages due to the design errors.

31.     The County's damages extend beyond the costs associated with the remediation phase of the project and also include additional operations and maintenance costs associated with the design error.  For example, the motors must be lifted out for maintenance by cranes installed in the Pump Stations.  The photograph on the left below shows one of the original 1,500 horse power motors being lifted by an overhead crane that is part of the Pump Station. The spreader bar of the crane is marked "CAPACITY 20 TON". The original 1,500 horse power motor weighed 35,000 lbs., and with spreader bar loaded the 20 ton crane to near its 40,000 lb. capacity.

(see photos on next page)

**Daniel T. Satterberg,** Prosecuting Attorney
CIVIL DIVISION, Contracts Section
900 King County Administration Building
500 Fourth Avenue
Seattle, Washington 98104
(206) 296-0430  Fax  (206) 296-0415

 

The photograph on the right shows the new 1,500 horse power motor, which weighs

approximately 50,000 lbs. Even with the 20 ton crane now being re-rated to 22 tons, the new

1,500 horse power motor plus spreader bar exceeds the lifting capacity of the crane by

approximately 7,000 lbs. Because of this, lifting the new 1500 horse power motor requires a

Planned Engineered Lift (PEL) protocol to lift beyond the rated capacity of the crane. This over-

capacity PEL procedure, while certified, is not acceptable to King County for routine use of a

brand new crane in a newly constructed Pump Station. The damages the County is claiming in

this lawsuit include the amount needed to retrofit the cranes on the two motor floors so that they

would have the capacity to safely lift the new 1,500 horse power motors to perform required

motor maintenance and any emergency repairs during the useful life of the motors.

        32.     The claim was submitted to the OCIP Insurers, Lexington Insurance Company

and Allied World Assurance Company (U.S.) Inc. In April 2012, the Insurers' Program

Daniel T. Satterberg, Prosecuting Attorney
CIVIL DIVISION, Contracts Section
900 King County Administration Building
500 Fourth Avenue
Seattle, Washington 98104
(206) 296-0430  Fax (206) 296-0415

1    Manager met with King County to discuss remediation costs. At that time, the Insurers <u>refused</u>

2    to pay the actual costs incurred by King County in a contemporaneous time frame. The Insurers

3    claimed that they intended to pay for all of King County's actual costs at a single time, in a

4    lump sum, in order to achieve a single, global settlement. The Insurers' Program Manager said

5    they would pay the County's costs based on a forward priced estimate.  But that was a hollow

6    claim by the Insurers. Nearly four years after the surge event, neither the Engineers nor

7    Lexington Insurance Company nor Allied World Assurance Company (U.S.) Inc. has paid a

8    single penny of King County's out-of-pocket costs.

9

10        33.    To make matters worse, the engineering firms that have been paid millions of

11   dollars on King County projects – have neither paid King County nor, it appears, insisted that

12   the insurance companies pay King County what is owed. Hiding behind the Insurers, CH2M

13   Hill has not stepped up to the plate to compensate King County's out-of-pocket costs for which

14   it is legally liable.

15

16               **INSURERS' BARGAINING, BAD FAITH, EXTRACTING CONCESSIONS**

17        34.    The Insurers demanded that King County enter into a "Phase I Agreement" with

18   the Design Team before the Insurers would agree to pay an initial $300,000 required to start the

19   remediation process. The Phase I Agreement failed to compensate King County for the out-of-

20   pocket costs that King County incurred and would continue to incur as a result of the design

21   errors. The Phase I Agreement was executed on June 12, 2012 and it left the County's costs

22   unresolved.

23

24        35.    By early 2013, the Design Team informed King County that the initial

25   engineering had confirmed that the new motors would run the current pumps; but the motors

26   were so customized and complex it would take the Brazilian company, the only company

FIRST AMENDED COMPLAINT FOR
DAMAGES AND DECLARATORY RELIEF - 11

**Daniel T. Satterberg**, Prosecuting Attorney
CIVIL DIVISION, Contracts Section
900 King County Administration Building
500 Fourth Avenue
Seattle, Washington 98104
(206) 296-0430  Fax  (206) 296-0415

willing to make them, nine months to a year to manufacture them.  It was critically important to

purchase the motors by June of 2013 so that they could be installed in the low flow summer of

2014, before the start of winter in the fall of 2014. Any further delay would subject the

Brightwater pump station to another dangerous winter – which of course meant the threat of

storms and power outages for which the original design of the IPS was woefully ill-equipped.

The Design Team made a trip to Boston, Massachusetts, in order to meet with the Insurers'

Program Manager. The Engineers communicated to the Insurers the dangers of delaying

purchase of the motors. Armed with this knowledge, the Insurers used the extreme time

sensitivity of the motor purchase as leverage to extract monetary concessions from King

County.

36.     Although the Insurers had promised a "Phase II Agreement" that would cover

King County's costs would be executed in August of 2012 shortly after the July 2012 Phase I

Agreement, the Insurers did not proceed with Phase II until 2013 and they insisted that the

Insurers be parties to the Phase II Agreement and, thereby, influenced its terms. The Insurers did

not appear to question their responsibility for King County's costs, but the Insurers set up

unreasonable terms and engaged in protracted delay of any payment.

37.     On May 22, 2013, King County met with the Insurers' representative to discuss

King County's out-of-pocket costs as a result of the design errors and how those costs would be

compensated in the Phase II Agreement. The Insurers played hardball, refusing to pay a

significant portion of King County's expenditures. The Insurers then dragged the negotiations

from May to June and July, creating a crisis because the Engineers would not commit to

purchase the new motors without insurance funding and delay to the manufacturing would delay

installing the new motors until after October 2014, the start of the wet season. Facing a risk to

**Daniel T. Satterberg,** Prosecuting Attorney
CIVIL DIVISION, Contracts Section
900 King County Administration Building
500 Fourth Avenue
Seattle, Washington 98104
(206) 296-0430  Fax  (206) 296-0415

public safety and welfare, King County acceded to certain terms demanded by the Insurers. The Phase II Agreement was not finally executed by the last Insurer until July 31, 2013.

38.     In exchange for the Insurers' agreement to pay for the design Engineers' remediation efforts – including approximately $3 million to purchase the motors – King County was forced to leave the issue of compensation for its own costs for another day and, to make matters worse, was forced by the Insurers to agree that it would cap its demand for payment in subsequent good-faith negotiations for a "global settlement agreement." The Phase II Agreement at 3. provided:

> The remaining cost to complete the Remediation shall be subject to continued global settlement agreement negotiations between CH2M Hill (and BC) and the Project Insurers but shall in no event exceed $4.5 million in the aggregate [engineers are also granted $6.8 in another section]. In those global settlement agreement negotiations, King County agrees to cap its claim as presented on May 22, 2013 of approximately $2.8 million and its present demand of $1.8 million and agrees that neither shall be increased. The Parties agree to negotiate in good faith the terms of a potential global settlement of the Surge Mitigation Issues/ Remediation within the monetary parameters above.

39.     The Phase II Agreement at 4. also provided:

> Upon the Project Insurers['] issuance of Final Payment on the date indicated on the cost loaded Project Schedule attached as Exhibit A to this Phase II Agreement, and within the monetary parameters of Paragraph No. 3 above, King County will provide a full and final release to CH2M Hill, BC and the Project Insurers of all known and reasonably knowable loss, liabilities, costs, debts, damages and claims arising out of or relating to the Surge Mitigation Issues …

40.     The parties who executed the Phase II Agreement were CH2M Hill, Inc., Brown and Caldwell, King County, Lexington Insurance Company, and Allied World Assurance Company (U.S.) Inc.

41.     Rather than convene global settlement negotiations, the Insurers continued to play hardball. In 2012, King County provided the Insurers cost estimates and responses to

FIRST AMENDED COMPLAINT FOR
DAMAGES AND DECLARATORY RELIEF - 13

**Daniel T. Satterberg,** Prosecuting Attorney
CIVIL DIVISION, Contracts Section
900 King County Administration Building
500 Fourth Avenue
Seattle, Washington 98104
(206) 296-0430  Fax  (206) 296-0415

1    questions. In April 2013, an analyst hired by the Insurers propounded questions and document

2    requests on King County. King County responded the same month. In May 2013, King County

3    submitted an updated cost estimate and a notebook of supporting documents. In June of 2013,

4    the Insurers responded they would not address King County's costs at that time. The next

5    communication from the insurer on this topic was in December 2013, when it propounded more

6    questions. King County again responded and gave supporting documentation. In May 2014, the

7
8    Insurers propounded yet more questions – many of which were duplicates of previous questions.

9    Since 2012, King County has provided its Cost Summary based on actuals and projected

10   estimates for the remediation period and detailed responses to all questions with voluminous

11   supporting documentation, seven times.  King County has done everything it could to obtain

12   payment for its costs. The Insurers have done everything they could not to pay those costs.

13
14        42.    A year and a half after the Phase II Agreement, the Insurers have paid <u>nothing</u> for

15   King County's actual costs despite having received extensive documentation supporting those

16   costs. During this time the Program Manager directed the County to communicate with the

17   Insurers about its costs not with the Engineer, CH2M Hill, that owes a duty to pay King

18   County's costs. Again in 2014, King County offered to maintain its compromise offer to settle

19   for $1.8 million. The Insurers again rejected the offer and instead responded with a paltry

20   amount that was tantamount to a denial of benefits. At that point the County had to acknowledge

21   the Insurers and the Engineers had not and would not participate in good faith, global settlement

22
23   negotiations, as agreed upon in the Phase II Agreement.

24

25

26

**Daniel T. Satterberg,** Prosecuting Attorney
CIVIL DIVISION, Contracts Section
900 King County Administration Building
500 Fourth Avenue
Seattle, Washington 98104
(206) 296-0430  Fax  (206) 296-0415

## SUMMARY

43.     To recap the state of affairs:

A.     CH2M Hill committed egregious omissions and errors in the design of the Brightwater Influent Pump Station.

B.     The errors created the risk of catastrophic loss of life and property. It was simply not an option for King County to leave the errors in place without fixing them.

C.     King County did the responsible thing by establishing the OCIP and purchasing insurance precisely to cover such errors.

D.     The insurance companies have paid the Engineers for the remediation work that was required to fix their own negligence. The ratepayers, meanwhile, have incurred millions of dollars in unreimbursed costs that they should not have to pay, to cover King County's operation of the Pump Station in its hobbled pre-remediation state; during the sequential remediation; and to address the compromised operation post-remediation.

E.     The insurance companies used the urgency of remediating the design errors – which posed a danger to public welfare and health – to extract concessions from King County.

F.     The Engineers – consultants who have been paid millions of dollars on King County public works projects – hid behind the Insurers' actions. It does not appear that either of the engineering firms has ever insisted the Insurers pay the damages CH2M Hill owes to King County.

G.     Defendants leave King County no choice but to file this lawsuit.

**Daniel T. Satterberg,** Prosecuting Attorney
CIVIL DIVISION, Contracts Section
900 King County Administration Building
500 Fourth Avenue
Seattle, Washington 98104
(206) 296-0430  Fax (206) 296-0415

## CAUSES OF ACTION VS. CH2M HILL

44.     **CAUSE OF ACTION NO. 1: PROFESSIONAL NEGLIGENCE**

A.      King County incorporates all of the preceding paragraphs as if fully set forth herein.

B.      CH2M Hill owed King County a duty to comply with the standard of care for the profession to which it belongs. CH2M Hill has a duty to exercise the degree of skill, care, and learning expected of a reasonably prudent professional in the State of Washington acting in the same or similar circumstances.

C.      CH2M Hill failed to exercise the degree of skill, care, and learning required of them. CH2M Hill engaged in acts or omissions that fell below the applicable standard of care.

D.      King County suffered damage as a proximate result of CH2M Hill's acts or omissions.

45.     **CAUSE OF ACTION NO. 2: BREACH OF CONTRACT**

A.      King County incorporates all of the preceding paragraphs as if fully set forth herein.

B.      CH2M Hill is in breach of the contractual obligations undertaken in connection with the Brightwater project.

C.      King County suffered damages, including consequential losses, in an amount to be proven at trial, due to CH2M Hill's failure to perform the engineering contract as expected.

D.      In addition to King County's costs, losses and damages, CH2M Hill is liable for the reasonable attorney fees and costs King County has incurred.

**Daniel T. Satterberg**, Prosecuting Attorney
CIVIL DIVISION, Contracts Section
900 King County Administration Building
500 Fourth Avenue
Seattle, Washington 98104
(206) 296-0430  Fax  (206) 296-0415

1

## CAUSES OF ACTION VS. INSURERS

2

46.    **CAUSE OF ACTION NO. 3:  BREACH OF CONTRACT**

3

    A.    King County incorporates all of the preceding paragraphs as if fully set

4

forth herein.

5

    B.    The Insurers have failed to pay King County the benefits owed under the

6

7

Policy.

8

    C.    King County is entitled to coverage under the subject insurance policy.

9

    D.    The Insurers are in breach of contract.

10

    E.    King County has sustained damage as a result of the Insurers' breach in

11

an amount to be proven at trial.

12

    F.    In addition to King County's damages, the Insurers are liable for King

13

14

County's reasonable attorney fees and costs under *Olympic Steamship Co. v. Centennial*

15

*Insurance Co.*, 117 Wn.2d 37, 51-53, 811 P.2d 673 (1991).

16

47.    **CAUSE OF ACTION NO. 4:  INSURANCE BAD FAITH**

17

    A.    King County incorporates all of the preceding paragraphs as if fully set

18

forth herein.

19

    B.    The Insurers violated their duty of good faith.

20

    C.    The Insurers' conduct was unreasonable, frivolous, or unfounded.

21

22

    D.    The Insurers are in violation of the provisions of the Unfair Claim

23

Settlement Practices Regulation.

24

    E.    King County sustained damage as a result of the Insurers' conduct.

25

26

**Daniel T. Satterberg**, Prosecuting Attorney
CIVIL DIVISION, Contracts Section
900 King County Administration Building
500 Fourth Avenue
Seattle, Washington 98104
(206) 296-0430  Fax (206) 296-0415

F.      Insurers are liable for King County's consequential, economic and noneconomic damages, in addition to reasonable attorney fees and costs. under McGreevy v. Oregon Mutual Insurance Co., 128 Wn.2d 26, 37, 904 P.2d 731 (1995).

48.     **CAUSE OF ACTION NO. 5:  NEGLIGENT CLAIMS HANDLING**

A.      King County incorporates all of the preceding paragraphs as if fully set forth herein.

B.      The Insurers' handling the insurance claim was unreasonable and falls below the applicable standard of care.

C.      The Insurers are in violation of the provisions of the Unfair Claim Settlement Practices Regulation.

D.      King County sustained damage as a result of the Insurers' conduct.

49.     **CAUSE OF ACTION NO. 6:  CONSUMER PROTECTION ACT VIOLATION**

A.      King County incorporates all of the preceding paragraphs as if fully set forth herein.

B.      King County, as an additional insured,  is a first party claimant to the subject insurance policy.

C.      The Insurers engaged in unfair or deceptive acts or practices.

D.      The Insurers' conduct occurred in trade or commerce.

E.      The Insurers are in violation of the provisions of the Unfair Claims Settlement Practices Regulation.

F.      The Insurers' conduct affected the public interest.

FIRST AMENDED COMPLAINT FOR
DAMAGES AND DECLARATORY RELIEF - 18

**Daniel T. Satterberg,** Prosecuting Attorney
CIVIL DIVISION, Contracts Section
900 King County Administration Building
500 Fourth Avenue
Seattle, Washington 98104
(206) 296-0430 Fax (206) 296-0415

G.    The Insurers' conduct caused injury to King County's "business or property," as those terms are defined for purposes of the Consumer Protection Act.

H.    King County sustained damage as a result of the Insurers' conduct.

I.    In addition to King County's damages, the Insurers are liable for attorney fees and costs under RCW 19.86.090.

J.    The Court should order the Insurers to pay enhanced damages under RCW 19.86.090.

50.    **CAUSE OF ACTION NO. 7:  INSURANCE FAIR CONDUCT ACT VIOLATION**

A.    King County incorporates all of the preceding paragraphs as if fully set forth herein.

B.    King County is a first party claimant on a policy of insurance.

C.    The Insurers unreasonably denied King County coverage or payment of benefits, in violation of the Insurance Fair Conduct Act. The Insurers are in violation of the provisions of the Unfair Claims Settlement Practices Regulation.

D.    More than 20 days have passed since King County gave notice to Lexington and AWAC of their breaches of RCW 48.30.015 for unreasonably denying coverage for a claim, and violations of WAC regulations: WAC 284-30-330, WAC 284-30-360, WAC 284-30-370, and WAC 284-30-380.

E.    As a result of the Insurers' conduct, King County sustained actual damages.

F.    The Insurers are liable for King County's actual damages, attorney fees, and litigation expenses. RCW 48.30.015(1).

**Daniel T. Satterberg,** Prosecuting Attorney
CIVIL DIVISION, Contracts Section
900 King County Administration Building
500 Fourth Avenue
Seattle, Washington 98104
(206) 296-0430  Fax  (206) 296-0415

G.     The Court should order the Insurers to pay enhanced damages under RCW 48.30.015(2).  Under this Act, King County seeks and is entitled to treble damages and attorney fees.

H.     As further consequence of their conduct, these defendants have forfeited all rights to deny coverage, are estopped from doing so, and are liable for the full amount of all King County's costs related to the design error.

51.     **CAUSE OF ACTION NO. 8:  DECLARATORY JUDGMENT**

A.     King County incorporates all of the preceding paragraphs as if fully set forth herein.

B.     There exists a justiciable controversy among the parties to this action.

C.     King County requests a declaratory judgment relating to the effect of the Phase II Agreement as follows:

i.     The $4.5 million cap on damages only serves as a limitation on the costs claimed directly by CH2M Hill and Brown and Caldwell from the Insurers and does not limit the damages that may be recovered by King County from any of the defendants in this case. *See* Phase II Agreement at 3. (quoted above).  ("The remaining cost to complete the Remediation shall be subject to continued global settlement agreement negotiations between CH2M Hill (and BC) and the Project Insurers but shall in no event exceed $4.5 million in the aggregate." (emphasis added)).

ii.     The Phase II Agreement cap on King County's damages applies only to the amounts that could be claimed during good-faith negotiations, not the amounts that can be claimed in litigation against the defendants in this action. *Id.*

**Daniel T. Satterberg,** Prosecuting Attorney
CIVIL DIVISION, Contracts Section
900 King County Administration Building
500 Fourth Avenue
Seattle, Washington 98104
(206) 296-0430  Fax  (206) 296-0415

("In those global settlement agreement negotiations, King County agrees to cap its claim as presented on May 22, 2013 of approximately $2.8 million and its present demand of $1.8 million and agrees that neither shall be increased. The parties agree to negotiate in good faith the terms of a potential global settlement of the Surge Mitigation Issue/Remediation within the monetary parameters above." (emphases added)).

      iii.     Defendants are in breach of the Phase II Agreement because they failed to negotiate in good faith.

      iv.     Because the Insurers (1) have not engaged in good faith negotiations as required by the Phase II Agreement and (2) have not paid King County an amount determined in such good faith negotiations, King County has no obligation to execute a full and final release of defendants. *Id.* ("Upon the Project Insurers['] issuance of Final Payment on the date indicated on the cost loaded Project Schedule attached as Exhibit A to this Phase II Agreement, and within the monetary parameters of Paragraph No. 3 above, King County will provide a full and final release to . . . the Project Insurers . . . " (emphasis added)).

## PRAYER FOR RELIEF

WHEREFORE, King County prays for the following relief:

52.     For a declaratory judgment as set forth above;

53.     For an award of all money damages legally available as a result of CH2M Hill's breaches, acts, and omissions;

Daniel T. Satterberg, Prosecuting Attorney
CIVIL DIVISION, Contracts Section
900 King County Administration Building
500 Fourth Avenue
Seattle, Washington 98104
(206) 296-0430  Fax  (206) 296-0415

54.     For an award of all relief legally available as a result of the breaches, acts, and omissions of the Insurers, Lexington Insurance Co. and Allied World Assurance Company (U.S.) Inc.;

55.     For an award of enhanced damages against the Insurers under RCW 48.30.015 and RCW 19.86.090;

56.     For an award of attorney fees and other costs of litigation recoverable under the engineering contract, applicable statutes, and common law, including but not limited to RCW 19.86.090, RCW 48.30.015, and *Olympic Steamship Inc. v. Centennial Ins. Co.*, 117 Wn.2d 37 (1991);

57.     For an award of all costs with respect to the claims asserted in this complaint;

58.     For an award of pre- and post-judgment interest to the extent allowed by law;

59.     For all such other relief this Court deems just and equitable.

DATED this 19th day of March 2015.

<div style="margin-left:40%">

For DANIEL J. SATTERBERG
King County Prosecuting Attorney

By _____
Mary DeVuono Englund, WSBA #17122
Senior Deputy Prosecuting Attorney

Attorneys for Plaintiff King County

</div>

**Daniel T. Satterberg**, Prosecuting Attorney
CIVIL DIVISION, Contracts Section
900 King County Administration Building
500 Fourth Avenue
Seattle, Washington 98104
(206) 296-0430  Fax  (206) 296-0415

1
2
3
4
5
6

RECEIVED
MAR 2 0 2015
INSURANCE
COMMISSIONER

SUPERIOR COURT OF WASHINGTON IN AND FOR KING COUNTY

7

8    KING COUNTY, a Washington Municipal            )
     Corporation,                                   )
9                                                   )    No. 15-2-03541-0 SEA
                                  Plaintiff,        )
10                                                  )    SUMMONS (40 Day)
             v.                                     )
11                                                  )
     LEXINGTON INSURANCE COMPANY;                   )
12   ALLIED WORLD ASSURANCE COMPANY                 )
     (U.S.) INC.; and CH2M HILL, INC.,              )
13                                                  )
                                  Defendants.       )
14                                                  )

15

16        TO:  DEFENDANTS LEXINGTON INSURANCE COMPANY and ALLIED WORLD

17   ASSURANCE COMPANY (U.S.), INC.:  A lawsuit has been started against you in the above-

18   entitled court by plaintiff, King County.  Plaintiff's claim is stated in the written First Amended

19   Complaint, a copy of which is served upon you with this summons.

20        In order to defend against this lawsuit, you must respond to the First Amended Complaint

21   by stating your defense in writing, and by serving a copy upon the person signing this summons

22   within 40 days from the date of the service upon the commissioner pursuant to RCW 48.15.150(3),

23   or a default judgment may be entered against you without notice.  A default judgment is one where

SUMMONS - 1

**Daniel T. Satterberg**, Prosecuting Attorney
CIVIL DIVISION, Contracts Section
900 King County Administration Building
500 Fourth Avenue
Seattle, Washington  98104
(206) 296-0430  Fax (206) 296-0415

1  plaintiff is entitled to what has been asked for because you have not responded.  If you serve a

2  notice of appearance on the undersigned person, you are entitled to notice before a default judgment

3  may be entered.

4       You may demand that the plaintiff file this lawsuit with the court.  If you do so, the demand

5  must be in writing and must be served upon the person signing this summons.  Within 14 days after

6  you serve the demand, the plaintiff must file this lawsuit with the court, or the service on you of this

7  summons and complaint will be void.

8       If you wish to seek the advice of an attorney in this matter, you should do so promptly so

9  that your response, if any, may be served on time.

10      THIS SUMMONS is issued pursuant to Rule 4 of the Superior Court Civil Rules of the

11 State of Washington.

12      DATED this 19th day of March, 2015.

13                     DANIEL T. SATTERBERG
                       King County Prosecuting Attorney
14

15              By   _Mary DeVono Englund_
                     Mary DeVono Englund, WSBA #17122
16                   Senior Deputy Prosecuting Attorney

17              Attorneys for Plaintiff King County

18

19

20

21

22

23

**Daniel T. Satterberg**, Prosecuting Attorney
CIVIL DIVISION, Contracts Section
900 King County Administration Building
500 Fourth Avenue
Seattle, Washington  98104
(206) 296-0430  Fax (206) 296-0415

1
2
3
4
5
6
7

SUPERIOR COURT OF WASHINGTON IN AND FOR KING COUNTY

8  KING COUNTY, a Washington Municipal  )
   Corporation,                          )
9                                        )     No. 15-2-03541-0 SEA
                            Plaintiff,   )
10                                       )     SUMMONS (20/60 Day)
                                         )
         v.                              )
11                                       )
   LEXINGTON INSURANCE COMPANY;          )
12 ALLIED WORLD ASSURANCE COMPANY        )
   (U.S.) INC.; and CH2M HILL, INC.,     )
13                                       )
                            Defendants.  )
14 ─────────────────────────────────────

15
16      TO DEFENDANT CH2M HILL, INC.:  A lawsuit has been started against you in the

17 above-entitled court by plaintiff, King County.  Plaintiff's claim is stated in the written First

18 Amended Complaint, a copy of which is served upon you with this summons.

19      In order to defend against this lawsuit, you must respond to the First Amended Complaint

20 by stating your defense in writing, and by serving a copy upon the person signing this summons

21 within 20 days after the service of this summons (or 60 days if served outside the State of

22 Washington), excluding the day of service, or a default judgment may be entered against you

23 without notice.  A default judgment is one where plaintiff is entitled to what has been asked for

SUMMONS - 1

Daniel T. Satterberg, Prosecuting Attorney
CIVIL DIVISION, Contracts Section
900 King County Administration Building
500 Fourth Avenue
Seattle, Washington 98104
(206) 296-0430  Fax (206) 296-0415

1   because you have not responded.  If you serve a notice of appearance on the undersigned person,

2   you are entitled to notice before a default judgment may be entered.

3         You may demand that the plaintiff file this lawsuit with the court.  If you do so, the demand

4   must be in writing and must be served upon the person signing this summons.  Within 14 days after

5   you serve the demand, the plaintiff must file this lawsuit with the court, or the service on you of this

6   summons and First Amended Complaint will be void.

7         If you wish to seek the advice of an attorney in this matter, you should do so promptly so

8   that your response, if any, may be served on time.

9         THIS SUMMONS is issued pursuant to Rule 4 of the Superior Court Civil Rules of the

10   State of Washington.

11         DATED this 19th day of March, 2015.

12                        DANIEL T. SATTERBERG
                              King County Prosecuting Attorney

13

14                        By _____
                            Mary DeVuono Englund, WSBA #17122

15                           Senior Deputy Prosecuting Attorney

16                        Attorneys for Plaintiff King County

17

18

19

20

21

22

23

SUMMONS - 2

**Daniel T. Satterberg**, Prosecuting Attorney
CIVIL DIVISION, Contracts Section
900 King County Administration Building
500 Fourth Avenue
Seattle, Washington  98104
(206) 296-0430  Fax (206) 296-0415

26009230

**FILED**

15 FEB 12 AM 9:00

KING COUNTY
SUPERIOR COURT CLERK
E-FILED
CASE NUMBER: 15-2-03541-0 SEA

IN THE SUPERIOR COURT OF THE STATE OF WASHINGTON
IN AND FOR THE COUNTY OF KING

| | |
|---|---|
| King County | NO.   15-2-03541-0 SEA |
| Plaintiff(s), | ORDER SETTING CIVIL CASE SCHEDULE |
| vs. | ASSIGNED JUDGE: Spearman, Mariane C., Dept. 53 |
| Lexington Insurance Company and Allied World Assurance Company | FILED DATE: 2/12/2015 |
| Respondent(s) | TRIAL DATE: 2/29/2016 |
| | SCOMIS CODE: *ORSCS |

RECEIVED
MAR 2 0 2015
INSURANCE
COMMISSIONER

A civil case has been filed in the King County Superior Court and will be managed by the Case Schedule on Page 3 as ordered by the King County Superior Court Presiding Judge.

## I. NOTICES

**NOTICE TO PLAINTIFF:** The Plaintiff may serve a copy of this **Order Setting Case Schedule** (*Schedule*) on the Defendant(s) along with the *Summons and Complaint/Petition*. Otherwise, the Plaintiff shall serve the *Schedule* on the Defendant(s) within 10 days after the later of: (1) the filing of the *Summons and Complaint/Petition* or (2) service of the Defendant's first response to the *Complaint/Petition*, whether that response is a *Notice of Appearance*, a response, or a Civil Rule 12 (CR 12) motion.  The *Schedule* may be served by regular mail, with proof of mailing to be filed promptly in the form required by Civil Rule 5 (CR 5).

**"I understand that I am required to give a copy of these documents to all parties in this case."**

_____            |            _____
PRINT NAME                                                        SIGN NAME

26009230

## I. NOTICES  (continued)

**NOTICE TO ALL PARTIES:**
All attorneys and parties should make themselves familiar with the King County Local Rules [*KCLCR*] -- especially those referred to in this *Schedule*. In order to comply with the *Schedule*, it will be necessary for attorneys and parties to pursue their cases vigorously from the day the case is filed. For example, discovery must be undertaken promptly in order to comply with the deadlines for joining additional parties, claims, and defenses, for disclosing possible witnesses [*See KCLCR 26*], and for meeting the discovery cutoff date [*See KCLCR 37(g)*].

**CROSSCLAIMS, COUNTERCLAIMS AND THIRD PARTY COMPLAINTS:**
A filing fee of **$240** must be paid when any answer that includes additional claims is filed in an existing case.

**KCLCR  4.2(a)(2)**
A Confirmation of Joinder, Claims and Defenses or a Statement of Arbitrability must be filed by the deadline in the schedule. The court will review the confirmation of joinder document to determine if a hearing is required.  If a Show Cause order is issued, all parties cited in the order must appear before their Chief Civil Judge.

**PENDING  DUE  DATES  CANCELED  BY FILING PAPERS THAT RESOLVE THE CASE:**
When a final decree, judgment, or order of dismissal of <u>all parties and claims</u> is filed with the Superior Court Clerk's Office, and a courtesy copy delivered to the assigned judge, all pending due dates in this *Schedule* are automatically canceled, including the scheduled Trial Date. It is the responsibility of the parties to 1) file such dispositive documents within 45 days of the resolution of the case, and 2) strike any pending motions by notifying the bailiff to the assigned judge.

Parties may also authorize the Superior Court to strike all pending due dates and the Trial Date by filing a *Notice of Settlement* pursuant to KCLCR 41, and forwarding a courtesy copy to the assigned judge. If a final decree, judgment or order of dismissal of <u>all parties and claims</u> is not filed by 45 days after a *Notice of Settlement*, the case may be dismissed with notice.

**If you miss your scheduled Trial Date**, the Superior Court Clerk is authorized by KCLCR  41(b)(2)(A) to present an *Order of Dismissal*, without notice, for failure to appear at the scheduled Trial Date.

**NOTICES OF APPEARANCE OR WITHDRAWAL AND ADDRESS CHANGES:**
*All parties to this action must keep the court informed of their addresses.* When a Notice of Appearance/Withdrawal or Notice of Change of Address is filed with the Superior Court Clerk's Office, parties must provide the assigned judge with a courtesy copy.

**ARBITRATION  FILING <u>AND</u> TRIAL DE NOVO POST ARBITRATION FEE:**
A Statement of Arbitrability must be filed by the deadline on the schedule **if the case is subject to mandatory arbitration** and service of the original complaint and all answers to claims, counterclaims and cross-claims have been filed.  If mandatory arbitration is required after the deadline, parties must obtain an order from the assigned judge transferring the case to arbitration. **Any party filing a Statement must pay a $220 arbitration fee.** If a party seeks a trial de novo when an arbitration award is appealed, a fee of $250 and the request for trial de novo must be filed with the Clerk's Office Cashiers.

**NOTICE OF NON-COMPLIANCE FEES:**
All parties will be assessed a fee authorized by King County Code 4A..630.020 whenever the Superior Court Clerk must send notice of non-compliance of schedule requirements <u>and/or</u> Local Civil Rule 41.

**King County Local Rules are available for viewing at <u>www.kingcounty.gov/courts/clerk.</u>**

26009230

## II. CASE SCHEDULE

| √ | CASE EVENTS | DATE |
|---|---|---|
| | Case Filed and Schedule Issued. | 2/12/2015 |
| √ | Last Day for Filing Statement of Arbitrability without a Showing of Good Cause for Late Filing [See KCLMAR2.1(a) and Notices on page 2]. **$220 Arbitration fee must be paid** | 7/23/2015 |
| √ | **DEADLINE** to file Confirmation of Joinder if not subject to Arbitration [See KCLCR 4.2(a) and Notices on page 2] | 7/23/2015 |
| | **DEADLINE** for Hearing Motions to Change Case Assignment Area [KCLCR 82(e)] | 8/6/2015 |
| | **DEADLINE** for Disclosure of Possible Primary Witnesses [See KCLCR 26(b)] | 9/28/2015 |
| | **DEADLINE** for Disclosure of Possible Additional Witnesses [KCLCR 26(b)] | 11/9/2015 |
| | **DEADLINE** for Jury Demand [See KCLCR 38(b)(2)] | 11/23/2015 |
| | **DEADLINE** for Change in Trial Date [See KCLCR 40(e)(2)] | 11/23/2015 |
| | **DEADLINE** for Discovery Cutoff [See KCKCR 37(g)] | 1/11/2016 |
| | **DEADLINE** for Engaging in Alternative Dispute Resolution [See KCLCR16(b)] | 2/1/2016 |
| | **DEADLINE** for Exchange Witness & Exhibit Lists & Documentary Exhibits  [See KCLCR 4(j)] | 2/8/2016 |
| √ | **DEADLINE** to file Joint Confirmation of Trial Readiness [See KCLCR 16(a)(1)] | 2/8/2016 |
| | **DEADLINE** for Hearing Dispositive Pretrial Motions [See KCLCR 56;CR56] | 2/16/2016 |
| √ | Joint Statement of Evidence [See KCLCR 4(k)] | 2/22/2016 |
| | **DEADLINE** for filing Trial Briefs, Proposed Findings of Fact and Conclusions of Law and Jury Instructions (Do not file proposed Findings of Fact and Conclusion of Law with the Clerk) | 2/22/2016 |
| | Trial Date [See KCLCR 40] | 2/29/2016 |

The √ indicates a document that must be filed with the Superior Court Clerk's Office by the date shown.

## III. ORDER

Pursuant to King County Local Rule 4 [*KCLCR 4*], IT IS ORDERED that the parties shall comply with the schedule listed above. Penalties, including but not limited to sanctions set forth in Local Rule 4(g) and Rule 37 of the Superior Court Civil Rules, may be imposed for non-compliance. It is FURTHER ORDERED that the party filing this action **must** serve this *Order Setting Civil Case Schedule* and attachment on all other parties.

DATED:   2/12/2015

_____
PRESIDING JUDGE

2/6009230

## IV. ORDER ON CIVIL PROCEEDINGS FOR ASSIGNMENT TO JUDGE

**READ THIS ORDER BEFORE CONTACTING YOUR ASSIGNED JUDGE.**
This case is assigned to the Superior Court Judge whose name appears in the caption of this case schedule. The assigned Superior Court Judge will preside over and manage this case for all pretrial matters.

**COMPLEX LITIGATION:**    If you anticipate an unusually complex or lengthy trial, please notify the assigned court as soon as possible.

**APPLICABLE RULES:**    Except as specifically modified below, all the provisions of King County Local Civil Rules 4 through 26 shall apply to the processing of civil cases before Superior Court Judges. The local civil rules can be found at http://www.kingcounty.gov/courts/superiorcourt/civil.aspx .

**CASE SCHEDULE AND REQUIREMENTS:**    Deadlines are set by the case schedule, issued pursuant to Local Civil Rule 4.

**THE PARTIES ARE RESPONSIBLE FOR KNOWING AND COMPLYING WITH ALL DEADLINES IMPOSED BY THE COURT'S LOCAL CIVIL RULES.**
**A. Joint Confirmation regarding Trial Readiness Report:**
No later than twenty one (21) days before the trial date, parties shall complete and file (with a copy to the assigned judge) a joint confirmation report setting forth whether a jury demand has been filed, the expected duration of the trial, whether a settlement conference has been held, and special problems and needs (e.g. interpreters, equipment, etc.).

**The form is** available at http://www.kingcounty.gov/courts/superiorcourt.aspx . If parties wish to request a CR 16 conference, they must contact the assigned court. Plaintiff's/petitioner's counsel is responsible for contacting the other parties regarding said report.

**B. Settlement/Mediation/ADR**
a. Forty five (45) days before the trial date, counsel for plaintiff/petitioner shall submit a written settlement demand. Ten (10) days after receiving plaintiff's/petitioner's written demand, counsel for defendant/respondent shall respond (with a counter offer, if appropriate).

b. Twenty eight (28) days before the trial date, a Settlement/Mediation/ADR conference shall have been held. FAILURE TO COMPLY WITH THIS SETTLEMENT CONFERENCE REQUIREMENT MAY RESULT IN SANCTIONS.

**C. Trial:** Trial is scheduled for 9:00 a.m. on the date on the case schedule or as soon thereafter as convened by the court. The Friday before trial, the parties should access the King County Superior Court website http://www.kingcounty.gov/courts/superiorcourt.aspx to confirm trial judge assignment. Information can also be obtained by calling (206) 205-5984.

## MOTIONS PROCEDURES
**A. Noting of Motions**
**Dispositive Motions:** All summary judgment or other dispositive motions will be heard with oral argument before the assigned judge. The moving party must arrange with the hearing judge a date and time for the hearing, consistent with the court rules. Local Civil Rule 7 and Local Civil Rule 56 govern procedures for summary judgment or other motions that dispose of the case in whole or in part. The local civil rules can be found at http://www.kingcounty.gov/courts/superiorcourt/civil.aspx.

**Non-dispositive Motions:** These motions, which include discovery motions, will be ruled on by the assigned judge without oral argument, unless otherwise ordered. All such motions must be noted for a date by which the ruling is requested; this date must likewise conform to the applicable notice requirements. Rather than noting a time of day, the Note for Motion should state "Without Oral Argument." Local Civil Rule 7 governs these motions, which include discovery motions. The local civil rules can be found at http://www.kingcounty.gov/courts/superiorcourt/civil.aspx.

25009230

**Motions in Family Law Cases not involving children:** Discovery motions to compel, motions in limine, motions relating to trial dates and motions to vacate judgments/dismissals shall be brought before the assigned judge. All other motions should be noted and heard on the Family Law Motions calendar. Local Civil Rule 7 and King County Family Law Local Rules govern these procedures. The local rules can be found at http://www.kingcounty.gov/courts/superiorcourt/civil.aspx.

**Emergency Motions:**   Under the court's local civil rules, emergency motions will be allowed only upon entry of an Order Shortening Time. However, emergency discovery disputes may be addressed by telephone call and without written motion, if the judge approves.

**B. Original Documents/Working Copies/ Filing of Documents:  All original documents must be filed with the Clerk's Office.**  Please see information on the Clerk's Office website at www.kingcounty.gov/courts/clerk regarding the new requirement outlined in LGR 30 that attorneys must e-file documents in King County Superior Court.  The exceptions to the e-filing requirement are also available on the Clerk's Office website.

The working copies of all documents in support or opposition must be marked on the upper right corner of the first page with the date of consideration or hearing and the name of the assigned judge. The assigned judge's working copies must be delivered to his/her courtroom or the Judges' mailroom.  Working copies of motions to be heard on the Family Law Motions Calendar should be filed with the Family Law Motions Coordinator.  On June 1, 2009 you will be able to submit working copies through the Clerk's office E-Filing application at www.kingcounty.gov/courts/clerk.

**Service of documents:**  E-filed documents may be electronically served on parties who opt in to E-Service within the E-Filing application.  The filer must still serve any others who are entitled to service but who have not opted in.  E-Service generates a record of service document that can be e-filed.  Please see information on the Clerk's office website at www.kingcounty.gov/courts/clerk regarding E-Service.

**Original Proposed Order:**  Each of the parties must include an original proposed order granting requested relief with the working copy materials submitted on any motion.  Do not file the original of the proposed order with the Clerk of the Court.   Should any party desire a copy of the order as signed and filed by the judge, a pre-addressed, stamped envelope shall accompany the proposed order.

**Presentation of Orders:** All orders, agreed or otherwise, must be presented to the assigned judge. If that judge is absent, contact the assigned court for further instructions. If another judge enters an order on the case, counsel is responsible for providing the assigned judge with a copy.

**Proposed orders finalizing settlement and/or dismissal by agreement of all parties shall be presented to the assigned judge or in the Ex Parte Department.**  Formal proof in Family Law cases must be scheduled before the assigned judge by contacting the bailiff, or formal proof may be entered in the Ex Parte Department.  **If final order and/or formal proof are entered in the Ex Parte Department, counsel is responsible for providing the assigned judge with a copy.**

**C. Form**
Memoranda/briefs for matters heard by the assigned judge may not exceed twenty four (24) pages for dispositive motions and twelve (12) pages for non-dispositive motions, unless the assigned judge permits over-length memoranda/briefs in advance of filing. Over-length memoranda/briefs and motions supported by such memoranda/briefs may be stricken.

*IT IS SO ORDERED.  FAILURE TO COMPLY WITH THE PROVISIONS OF THIS ORDER MAY RESULT IN DISMISSAL OR OTHER SANCTIONS.  PLAINTIFF/PETITTONER SHALL FORWARD A COPY OF THIS ORDER AS SOON AS PRACTICABLE TO ANY PARTY WHO HAS NOT RECEIVED THIS ORDER.*

**PRESIDING  JUDGE**

26009231

**FILED**

15 FEB 12 AM 9:00

KING COUNTY
SUPERIOR COURT CLERK
E-FILED
CASE NUMBER: 15-2-03541-0 SEA

RECEIVED
MAR 2 0 2015
INSURANCE
COMMISSIONER

SUPERIOR COURT OF WASHINGTON
COUNTY OF KING

King County

VS

Lexington Insurance Company and Allie

NO. 15-2-03541-0 SEA

CASE INFORMATION COVER SHEET
AND AREA DESIGNATION

<u>CAUSE OF ACTION</u>

**(COM) -**    BREACH OF CONTRACT (COM 2)

<u>AREA DESIGNATION</u>

**SEATTLE -**    Defined as all King County north of Interstate 90 and including all
of Interstate 90 right of way, all of the cities of Seattle, Mercer
Island, Issaquah, and North Bend, and all of Vashon and Maury
Islands.



P.O. BOX 40255
OLYMPIA, WA 98504-0255

7004 1160 0005 5525 4483

ALLIED WORLD ASSURANCE COMPANY (US),
2 LIBERTY SQUARE
BOSTON MA 02109



